UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
==================================================================
IN RE:

                                                               Bk. No. 07-11394

**HORIZON GROUP OF NEW ENGLAND, INC.,**

                                                               Chapter 11

                                 Debtor.
==================================================================

## DISCLOSURE STATEMENT

**THIS DISCLOSURE STATEMENT AND THE PLAN OF REORGANIZATION WHICH IS BEING SENT TO YOU CONTEMPORANEOUSLY WITH THIS DOCUMENT CONTAIN INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN PROPOSED BY THE DEBTOR. PLEASE READ THIS DOCUMENT WITH CARE.**

                                      **RICHARD H. WEISKOPF, ESQ.**
                                      **Attorney for Debtor**
                                      **Office & P.O. Address**
                                      **O'CONNELL & ARONOWITZ, P.C.**
                                      **54 State Street – 9th Floor**
                                      **Albany, New York  12207**
                                      **Telephone:  (518) 462-5601**

**THIS DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT") IS BEING SUBMITTED TO YOU BY THE DEBTOR IN AN EFFORT TO SOLICIT YOUR VOTE FOR A PROPOSED LIQUIDATION PLAN (THE "PLAN"). ALL CREDITORS ARE ENCOURAGED TO READ AND TO CAREFULLY CONSIDER THIS ENTIRE DISCLOSURE STATEMENT, THE PROPOSED LIQUIDATION PLAN AND THE MATTERS DESCRIBED IN THIS DISCLOSURE STATEMENT UNDER "RISK FACTORS" PRIOR TO SUBMITTING BALLOTS PURSUANT TO THIS SOLICITATION.**

**THE DEBTOR BELIEVES THAT THE APPROVAL OF THE PLAN IS IN THE BEST INTEREST OF CREDITORS. ALL CREDITORS ARE URGED TO VOTE IN FAVOR OF THE PLAN. VOTING INSTRUCTIONS ARE CONTAINED AT PAGE 5 OF THIS DISCLOSURE STATEMENT. TO BE COUNTED, YOUR BALLOT MUST BE DULY COMPLETED, EXECUTED AND RECEIVED ACCORDING TO THE INSTRUCTIONS BEFORE 5:00 P.M., EASTERN DAYLIGHT TIME ON _____ 2009.**

**THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN. NOTHING CONTAINED HEREIN WILL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, BE ADMISSIBLE IN ANY OTHER PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE LEGAL EFFECTS OF THE REORGANIZATION OF THE DEBTOR TO THE DEBTOR OR HOLDERS OF CLAIMS OR INTERESTS. CERTAIN INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS, BY ITS NATURE, FORWARD-LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS AND PROJECTIONS. THERE CAN BE NO ASSURANCE THAT ANY FORECAST OR PROJECTED RESULTS CONTAINED HEREIN WILL BE REALIZED AND ACTUAL RESULTS MAY BE MATERIALLY DIFFERENT FROM THOSE SHOWN.**

# I.

# INTRODUCTION

A. <u>Purpose of Disclosure Statement</u>

The Debtor recommends and solicits acceptance of its proposed Liquidation Plan ("Plan"), by all persons entitled to vote. A copy of the Plan accompanies this document. The Debtor is distributing this Disclosure Statement (the "Disclosure Statement") and Plan to all of the known Creditors of the Debtor, pursuant to Section 1125 of the United States Bankruptcy Code (the "Bankruptcy Code" or "Code"). This Disclosure Statement is intended to provide Creditors with information of a kind, and in sufficient detail, that would enable a typical Creditor to make an informed vote to accept or reject the Plan. This Disclosure Statement has been approved by the Bankruptcy Court before its distribution. The Plan itself is a separate document that is being distributed herewith. The terms of the Plan are incorporated herein by reference.

Although every effort has been made to ensure the accuracy of this Disclosure Statement and the Plan, in the event of a conflict between the terms of this Disclosure Statement and the Plan, the terms of the Plan shall be controlling. Accordingly, Creditors should be sure to review thoroughly the terms of that document, as well as this document.

B. <u>Definitions</u>

Except as otherwise expressly stated in this Disclosure Statement, all capitalized terms used in this Disclosure Statement shall have the same meanings given to such terms in the Definitions set forth in Article I of the Plan. Accordingly, Creditors should also be sure to thoroughly review Article I of the Plan in connection with their review of both this Disclosure Statement and the Plan.

All terms used in the Plan and Disclosure Statement that are defined in the Code shall have the meanings set forth in the Code, unless otherwise defined by the Plan and/or Disclosure Statement. All statutory references shall be to the Code, unless otherwise indicated. For those words or expressions not defined in the Code, the New York Uniform Commercial Code (the "UCC") shall control, except as to those matters governed under Federal law by the Internal Revenue Code of 1986 or the Securities Acts of 1933 or 1934, which shall govern, respectively, the interpretation of the words or phrases used in the Disclosure Statement and Plan relating to tax and securities matters.

C. <u>Sources of Information</u>

Except as otherwise expressly indicated, the portions of the Disclosure Statement describing Debtor, its business activities, its debts and its property have been prepared from information provided by and/or prepared by Debtor in conjunction with, among others, their investment Bankers and/or public accountants.

No representations concerning the Debtor, its assets, liabilities, or the post-reorganization operations of the Debtor inconsistent with anything contained herein have been authorized.

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR TO MAKE ANY REPRESENTATIONS CONCERNING THE DEBTOR THAN THOSE SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT AND THE PLAN SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL, WHO, IN TURN, SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.

THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. FOR THE FOREGOING REASONS, AS WELL AS BECAUSE OF THE COMPLEXITY OF THE DEBTOR'S FINANCIAL MATTERS, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE BY THE DEBTOR TO ENSURE THAT ALL MATTERS SET FORTH HEREIN ARE ACCURATE.

D. Filing of Reorganization Case

On May 16, 2007 (the "Petition Date"), Horizon Group of New England, Inc. (hereinafter referred to as the "Debtor" or "HGNE") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The bankruptcy filing was prompted by the failure of the New Jersey School Construction Corporation to satisfy liabilities owing to the debtor which impaired the debtor's ability to meet its ongoing obligations.

Upon the Filing of its Petition, Debtor became a "Debtor-in-Possession" under the Code and has operated its business in such capacity since that time.

B. Summary

Upon filing its petition, the debtor realized that due to the difficulties in collecting substantial sums of money from the New Jersey School Construction Corporation ("NJSCC"), and an inability to immediately collect funds due the debtor by the New York City School Construction Authority ("NYCSCA"), that the impaired cash flow would require the Debtor to liquidate what had once been a thriving business enterprise.

The Debtor had jobs in progress that had to be completed and all construction work in the northeast and Florida was completed during the first quarter of 2008. Thereafter, the Debtor reduced its staffing to a bare minimum which would enable it to continue the business operation of the debtor without ongoing new construction activities.

The Debtor truly believes that upon proper resolution of the ongoing litigation pending in New York and New Jersey, funds will be available in sufficient amounts to pay all creditors in full the amounts which are validly due and owing to them and to have remaining monies available to satisfy the interests of shareholders of the Debtor.

The Debtor has now filed with the United States Bankruptcy Court for the Northern District of New York (the "Bankruptcy Court") its proposed Liquidation Plan, whereby it sets forth that the funds received from the several claims pending payment in the State of New Jersey and those two claims pending in the State of New York will be acquired; those parties that have a secured interest in the recoveries of these accounts receivable will be satisfied and a distribution shall be made to all remaining creditors of the debtor in the amounts that are validly due and owing, once all priority creditors are satisfied in full. As discussed more fully hereinafter, the Plan will provide creditors with the best dollar value return which could be obtained since the remaining assets in the Debtor are of insignificant value. It is the Debtor's belief that it is in the best interests of all of Creditors for the Plan to be confirmed by the United States Bankruptcy Court. Accordingly, the Debtor requests that those Creditors entitled to vote for the Plan do so at this time.

**THE DEBTOR RECOMMENDS A VOTE FOR ACCEPTANCE OF THE PLAN.**

F. <u>Confirmation of Plan</u>

    1. <u>Solicitation of Acceptances</u>

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with Section 1125 of the Code and is being provided to each Creditor whose Claim has been scheduled by the Debtor or who has filed a Proof of Claim against the Debtor. The Disclosure Statement is intended to assist Creditors in evaluating the Plan and in determining whether to accept or reject the Plan. Under the Code, acceptance or rejection of the Plan may not be solicited unless a copy of this Disclosure Statement is furnished prior to or concurrently with such solicitation.

    2. <u>Manner of Voting on Plan</u>

Each Creditor entitled to vote on the Plan may cast its vote for or against the Plan by completing, dating and signing the Ballot for Accepting or Rejecting Plan (the "Ballot") accompanying this Disclosure Statement and Plan and by filing it with the Debtor's counsel. It is the practice of the Bankruptcy Court for the Northern District of New York to request that Ballots be sent directly to the Court for tabulation. Ballots may be filed by either personally delivering the Ballot or by mailing the Ballot to:

**O'CONNELL & ARONOWITZ, P.C.**
**Richard H. Weiskopf, Esq.**
**54 State Street – 9th Floor**
**Albany, New York 12207**
**Telephone: (518) 462-5601**

In order to be counted, all Ballots must be filed prior to the date established by an appropriate order of the Bankruptcy Court. A copy of the Bankruptcy Court Order establishing this date either accompanies this Disclosure Statement and Plan or is being sent to all Creditors under separate cover.

### 3. Persons Entitled to Vote on the Plan

Generally, only the votes of Classes of Creditors who's Claims are "impaired" by the Plan will be counted in connection with Confirmation of the Plan. Since litigation does not guarantee a recovery, all classes of creditors are deemed to be *"impaired"* since the recovery, in certain circumstances, may not guarantee 100% return on all creditors' claims. Any Creditors whose legal rights are being modified by the Plan or who, under the Plan, will receive less than payment in full of their respective Claims, are deemed *"impaired"*..

In determining acceptance of the Plan, votes will be counted only if submitted by a Creditor who, prior to the Proof of Claim bar date established by the Court, has either timely filed with the Bankruptcy Court a Proof of Claim which has not been disallowed, disqualified or suspended prior to computation of the vote on the Plan, or whose Claim was scheduled by the Debtor as an undisputed Claim in their Bankruptcy Schedules filed in this Case. Any Pre-Petition Claims which are filed after the Claims Bar Dates shall be deemed untimely filed and disallowed (in the absence of an Order of the Court permitting such Claim to be filed late) and the holders of any such Claims which are neither timely filed nor Scheduled by the Debtor as undisputed are not eligible to vote on the Plan.

### 4. Hearing on Confirmation of Plan

The Bankruptcy Court will hold a hearing to determine whether the Plan has been accepted by the requisite number of Creditors and whether the other requirements for Confirmation of the Plan have been satisfied. Each Creditor and Equity Interest Holder will receive, either with this Disclosure Statement and Plan or separately, the Bankruptcy Court's Notice of Hearing on Confirmation of the Plan.

### 5. Acceptances Necessary to Confirm Plan

To confirm the Plan, the Court, at the hearing on Confirmation, must find that it and its proponents comply with the provisions of Code Section 1129.

At the Confirmation Hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by at least one Class of Creditors whose Claims are impaired by the Plan. Under Section 1126 of the Code, an impaired Class is deemed to have accepted the Plan if (i) at least two-thirds in amount and (ii) more than one-half in number of the Allowed Claims of Class members who have voted on the Plan have voted to accept it. Furthermore, unless there is acceptance of the Plan by an impaired Class, the Bankruptcy Court must also determine that under the Plan, Class members will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Class members would receive or retain if the Debtor were liquidated under Chapter 7 of the Code.

Chapter 11 of the Code permits the adjustment of Secured Claims and Unsecured Claims. A Chapter 11 Plan may provide less than full satisfaction of senior indebtedness and payment of junior indebtedness or may provide for retention of equity interests absent full satisfaction of indebtedness if no impaired Class with a higher payment priority votes against the Plan.

6. <u>Cram down: Confirmation Without Acceptance by All Impaired Classes</u>

In the event that any impaired Class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan, at the request of the Debtor if, as to each impaired Class which has not. accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to that Class. A Liquidation Plan "does not discriminate unfairly" within the meaning of the Bankruptcy Code, if no Class receives more than it is legally entitled to receive for its Claims or equity interests,

"Fair and equitable" has different meanings with respect to the treatment of Secured Claims, Unsecured claims, and Equity Interest Holders. As set forth in Section 1129(b)(2) of the Code, in pertinent part, those meanings are as follows:

(A) With respect to a class of secured claims, the plan provides:

(i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(iii) for the sale, subject to section 363(k) of this title [the Code], of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) and (iii) of this subparagraph; or

(iv) for the realization by such holders of the "indubitable equivalent" of such claims.

(B) With respect to class of unsecured claims, the plan provides:

(i) that each holder of a claim of such class receive or retain, on account of such claim, property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or interest.

The Debtor submits that proposed Plan that accompanies this Disclosure Statement should be approved by Creditors and should be confirmed by the Court because it provides Creditors with more than they would likely receive in any liquidation of the Debtor.

## II.

## SUMMARY OF THE PLAN

A. <u>Overview</u>.

The Debtor is at this time proposing a Liquidation Plan which classifies the Creditors and the order of payment which will be made once assets are recovered.

Clearly, the Plan which is proposed by the Debtor provides Creditors with a greater recovery than they would receive if the case were converted to a liquidation case under Chapter 7 of the Code where the Trustee would be under a mandate to resolve the outstanding claims in a quick and perhaps inadequate way. The litigation on the claims is well advanced with appointed counsel engaging in final discovery procedures prior to the cases being scheduled for trial. Conversion to a Chapter 7 liquidation plan would also send a message to the Defendants in the pending litigation which would chill any negotiations which are always ongoing since the Defendants would feel they could fare better in a Chapter 7 proceeding rather than in an orderly liquidation under Chapter 11. Thus, the Debtor believes that Creditors will do better under the proposed Plan than they would in Chapter 7 liquidation.

B. <u>General Description of the Plan</u>

The specific technical aspects of classification of claims and interests, payment of claims, the risks to the estate, a comparison of proposed payments under the Plan as proposed by the debtor compared to a Liquidation Plan and the applicable Bankruptcy Code provisions and consequences of confirmation are set forth hereafter at § V, <u>infra</u>, at length.

The next two pages set forth a summary of the Plan in regard to classification of claims and projected payments.

SUMMARY GUIDE TO CLASSIFICATION OF CLAIMS AND INTERESTS

| Class | Description |
|---|---|
| Class 1 | Attorneys' and accountants' fees and other claims allowed in accordance with Sections 503(b) and 507(a)(l) of the Bankruptcy Code including New York State Department of Labor (claim 78), IRS (claim 79) and Pitney Bowes (claim 82); |
| Class 2 | Claims of Internal Revenue Service, NYS Department of Taxation and Finance, NJ Taxation Department and any priority claimants pursuant to the remaining sections of §507, including National Labor Relations Board (claim 63), Ironworkers Local 580 (claim 65) and PCC BAC Local 1 (claim 61); |
| Class 3 | Secured creditors |
| Class 4 | Assumed Executory Contracts |
| Class 5 | General unsecured creditors with the exception of unsecured creditors whose claims are not liquidated |
| Class 6 | Unsecured creditors whose claims are not liquidated |

The total Projected Distribution under the Liquidation Plan is as follows:

| Class | Estimated Distribution as % of Allowed Claim | Method of Payment |
|---|---|---|
| Class 1 | 100% | Paid on the Effective Date of the Plan; |
| Class 2 | 0% to 100% | Distribution based on litigation recovery |
| Class 3 | 100% | Secured creditors to be paid according to contract terms and secured status against accounts receivable |
| Class 4 | 100% | Any assumed executory contracts to be paid according to their terms and defaults will have been cured prior to the effective date |
| Class 5 | 0% to 100% | All general unsecured creditors with the exception of those whose claims have not been liquidated will receive the next level of distribution from lawsuit recovery proceeds. |
| Class 6 | 0% | All unsecured creditors with unliquidated claims will share the sum of $1,000 in full satisfaction of their claims. |

C.  BACKGROUND

The Debtor has been in the commercial roofing and construction business since the company was formed in 1985. The business of the Debtor is located on 122 Old Karner Road, in the Town of Colonie, County of Albany and State of New York.

The Debtor's business involved primarily commercial roofing, but then expended into general large scale construction projects for governmental entities in the states of New York and New Jersey. The Debtor was the general contractor for the re-roofing of the Superdome in Houston, Texas, which job was completed; however, the roof blew off the structure during Hurricane Katrina. As a result of the failure of the roof, the Debtor and numerous other co-defendants were sued by several affected entities and the litigation is currently pending in State Court in the State of Texas. The Debtor has several million dollars of liability insurance coverage and bonding insurance for a similar amount of coverage, but the recovery which may be had once the case resolves could be greater than the available insurance coverages. The Debtor believes it has little or no responsibility for the failure of the roofing structure on the Superdome, however, since it was the general contractor, it may be found liable for the loss regardless of the fact that it bears little or no liability for the failure of the roof. The unliquidated creditors of the debtor are those entities which have filed claims concerning the Superdome lawsuit.

The Debtor has two sets of claims pending against NJSCC. The primary claim concerns the Harrison High School project where in the litigation the Debtor has provable claims in excess of ten million dollars. At the time of the filing of this Disclosure Statement and Plan, the SCC has advanced offers in settlement, however, the amount which has been offered is wholly inadequate to compromise the litigation. The second set of claims against NJSCC is not in suit, but involves several projects at various school sites within the State of New Jersey. The amount claimed on these smaller projects where payment was made except for final payments which were due on the jobs, the outstanding claims of the Debtor exceed one million dollars. Ongoing discussions are underway in an attempt to resolve the second set of claims. If and when a settlement is achieved and the Court approves such a settlement, the claim of the bonding company on those jobs will be satisfied and their claim will be eliminated in this proceeding. Any settlement would additionally reduce the claim of the remaining bonding company, Traveler's Insurance Company, whose claim at the commencement of the litigation exceed one million two hundred thousand dollars. This claim has increased during the pendency of the Chapter 11 proceeding in resolving issues with subcontractors whose payments have been delayed as a result of the litigation pending in New Jersey and New York.

Any recovery on any of the three sets of claims which are achieved by settlement will be brought before the Court for approval of the settlement, the satisfaction of legal fees and expenses, the satisfaction of the claim of the bonding company or companies, with proceeds that remain to be distributed in accordance with this Liquidation Plan. Any recovery obtained by judgment, once satisfied unless appealed, would first satisfy legal fees and expenses of special counsel to the Debtor, then satisfy the remaining claims of the Traveler's Insurance Company for its bonding exposure, with the remaining proceeds to be distributed in accordance with the Liquidation Plan.

During the course of the pendency of this Chapter 11 proceeding, all of the vehicles owned or leased by the Debtor have been returned to the secured lenders except one. All of the miscellaneous assets and tooling of the Debtor were sold and purchased under an Order granted by this Court on the December 12, 2008. The funds received from the sale of the assets, together with a claim due the Debtor from the Dormitory Authority of the State of New York ("DASNY") have been used to satisfy the Debtor's responsibility to the Department of Labor, a priority claimant, in an amount which approximates the combined proceeds from the sale and the amount due from DASNY. As a result, the New York State Department of Labor's priority claim against the debtor has been satisfied in full and will not share in any distribution in this Liquidation Plan.

The Schedule "B" assets of the Debtor have all been liquidated except for the remaining vehicle upon which there is a security interest and the three claims which have been detailed in this Disclosure Statement.

## III.

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN AND

## DESIGNATION OF IMPAIRED AND UNIMPAIRED CLASSES

A.  DEFINITION OF IMPAIRMENT

A Class of claims is not impaired under the Plan if the holders of such Class receive cash or other property equal to the allowed amount of its claims as of the consummation date of the Liquidation Plan. A Class of Claims is impaired under the Plan if the members of such Class do not receive cash or other property equal to the allowed amount of their claims as of the consummation date of the Plan. As is explained in more detail below, all Classes, except for Class 1, are impaired under the Plan.

The Consummation Date, also called the Effective Date, of the Plan shall be June 1, 2009. However, if the Plan is not confirmed by that date, the Effective Date of the Plan shall be eleven (11) days after the Order of Confirmation is entered.

B.  PARTY RESPONSIBLE FOR MAKING PAYMENTS REQUIRED UNDER THE PLAN

The reorganized Debtor shall be responsible for making all payments and distributions under the Plan. THE SOURCE OF ALL PAYMENTS SHALL BE THE CLAIMS RECOVERY AGAINST THE NJSCC and NYCSCA..

C.  TREATMENT OF CLASSES UNDER THE PLAN

The specific creditors and amounts under the plan are designated as follows:

12

**CLASS 1: <u>Administrative Claims. Including Attorneys' Fees and Trustee's Commissions</u>**

### A) ATTORNEYS' FEES

Counsel for the Debtor is O'Connell & Aronowitz, P.C., Richard H. Weiskopf, 54 State Street, 9th Floor, Albany, New York 12207

The Debtor's counsel has been paid $13,061 in fees and disbursements. There is an outstanding balance due per a Court Order in the sum of $9,842.00 for services through 10/31/08. Ongoing services 11/1/08 to 2/2/09 total $3,707 – Total due balance $13,549.

The balance of the total attorneys' fees and disbursements will be paid as allowed by the Court on the Effective Date of the Plan. It is estimated that attorneys' fees for Debtor's counsel will not exceed a further amount of $6,000.

### B) TRUSTEE'S COMMISSIONS

In a case under Chapter 11 of the Bankruptcy Code, unless the Court appoints a Trustee, the Debtor remains in possession and no Trustee's commissions are incurred, The Court has not appointed a Trustee in this case and none is expected to be appointed. The Debtor will have to pay fees to the Office of the United States Trustee pursuant to the revised fee schedule. All fees due to the United States Trustee will be paid prior to the Effective Date of the Plan.

### C) ACCOUNTANTS' FEES

The CPA for the Debtor is Philip Mahar, CPA, 1010 Anthony Drive, Schenectady, New York 12303. The debtor's CPA has been paid $0 in fees and disbursements. It is estimated that accountant's fees for Debtor's CPA will not exceed a further amount of $3,000.00.

### D) OTHER ADMINISTRATIVE CREDITORS

The remaining administrative creditors are the New York State Department of Labor with a claim of $151.11, the Internal Revenue Service for FICA contributions in the amount of $29,200 and Pitney Bowes for post-petition lease expense in the sum of $449.32. Total of the remaining administrative creditors' claims is $29,800.43.

**CLASS 2: <u>Claims of Internal Revenue Service, NYS Department of Taxation and Finance and any priority claimants pursuant to the remaining sections of §507</u>**

The debtor has the following creditors with priority claims against the estate:

| | |
|---|---|
| NLRB | Unliquidated |
| NYS Department of Labor | Satisfied by Court Order |
| NJ Taxation | $ 8,108.26 |
| NYS Taxation and Finance | $     80.84 |
| Ironworkers Local 580 | $25,359.29 |

      PCC BAC Local 1                     $76,595.76
      IRS                                         $   200.00

Payments to this Class will come from the recoveries and this Class will be satisfied in full so long as recoveries exceed the amount of money due to claimants.

**CLASS 3: <u>Secured Creditors</u>**

Secured creditors of the debtor are scheduled as follows:

Traveler's Insurance Company      $1,232,052.21 plus further disbursements
Atlantic Insurance                        $   410,162.18
DaimlerChrysler                            $    24,750.00
GMAC                                           $    27,418.45

Secured creditors with fixed collateral have been paid according to their contract terms post-petition and will continue to be paid following the effective date. Those creditors that are secured in the accounts receivable will be paid from the claims recovery process.

**CLASS 4: <u>Assumed Executory Contracts</u>**

It is not believed that there are any assumed executory contracts.

**CLASS 5: <u>General Unsecured creditors</u>**

Unsecured creditors shall receive a distribution of between 0% and 100% based upon the claim recovery process.

**CLASS 6: <u>Unsecured creditors with unliquidated claims</u>**

These creditors shall share pro rata in a fund to be established from the claims recovery process in the amount of $1,000.

**IV.**

**<u>FEASIBILITY</u>**

A Liquidation Plan does not mandate a feasibility analysis. The Debtor is not currently operating and its monthly financial reports are available to be reviewed in the docket of this case.

# V.

# LIQUIDATION ANALYSIS

The Debtor is liquidating in an effort to satisfy all or substantially all of the claims either filed or scheduled in this proceeding. Conversion to Chapter 7 will not enhance the percentage recovery to be obtained by orderly liquidation.

# VI.

# EXECUTORY CONTRACTS AND LEASES

All executory contracts and leases shall be rejected on the Effective Date of the Plan unless assumed in writing ten (10) days before the hearing on confirmation.

# VII.

# OTHER PLAN PROVISIONS

A. AMENDMENTS TO A CONFIRMED PLAN

The Plan provides a mechanism for amendments to be made after confirmation. An individual creditor may elect to accept a modified treatment of its claim without notice or formal amendment of the Plan. However, if the Debtor seeks to change the Plan to decrease the amount due to creditors after the plan is confirmed, then it must give notice to all creditors and seek Bankruptcy Court approval for the change.

B. EFFECT OF CONSUMMATION OF PLAN

The Bankruptcy Code and the Plan provide that confirmation of the Plan, on the consummation date (when the Debtor has completed all acts required under the Plan and made all payments) discharges the Debtor from any further claim against it for debts existing prior to the filing of the Bankruptcy petition.

C. CONTINUING JURISDICTION OF BANKRUPTCY COURT

The Plan provides for the Bankruptcy Court to retain jurisdiction until there is substantial consummation of the Plan. Assuming the other conditions of 11 U.S.C. § 1101(2) are satisfied, the Bankruptcy Court may find a Plan to be substantially consummated at the time the first payment is made pursuant to the Plan.

The Debtor's Plan also provides that the Bankruptcy Court will have continuing jurisdiction to approve settlement of the pending litigation and other claims remaining, which settlements must have judicial approval before they can be implemented.

D.  DISPUTED CLAIMS AND INTERESTS

The Plan provides a mechanism for resolving disputes concerning the amount of any Claim or Interest and for making a distribution on account of any such Claim or Interest once the dispute has been resolved.

If the Schedule of Assets and Liabilities or any amendment thereto filed by the Debtor with the Bankruptcy Court (the "Schedules") listed your Claim in a particular amount and with a particular or no priority and did not indicate that the amount of the Claim is disputed, then the Debtor does not intend to object to the allowance of your Claim in that particular amount. This means that, unless you have filed a proof of claim in a larger amount or some party in interest (such as the Committee or any individual Creditor or Security Holder) files an objection to your Claim and gives you notice thereof, your Claim will be allowed in time to receive the Initial Distribution and any subsequent distributions to your Class.

If the Schedules indicate that your Claim is disputed, or if you filed a proof of claim in a larger amount than is listed in the Schedules, then an objection to your Claim will likely be filed. in addition, if you have filed a proof of claim seeking alleged damages arising from the Debtor's rejection of an executory contract or unexpired lease, then, if the Debtor disagrees with your Claim, it will be disputed.

Until such time as the amount of a Disputed Claim or Interest is determined, the holder of the Claim will not participate in any distributions made to other members of the same class. However, there will be set aside and reserved by the estate the property the Claimant would be entitled to receive if the Claim or Interest were allowed in the full amount sought by the Claimant. Once the amount of the Claim has been determined, whether by agreement or by a Final Order, of the Bankruptcy Court, this amount will form the basis for a distribution to the Claimant equal to the amount that would have been distributed if the Claim or Interest had been allowed in that amount on the Consummation Date.

**VIII.**

**CONCLUSION**

The Debtor therefore recommends approval of the Plan.

Dated: February 6, 2008           */s/Richard H. Weiskopf*
                                  Richard H. Weiskopf, Esq.
                                  **O'Connell & Aronowitz, PC**
                                  Attorneys for Debtor
                                  Office & P.O. Address
                                  54 State Street – 9th Floor
                                  Albany, NY 12205
                                  (518) 462-5601